v. Brown May it please the court. My name is Erin Grebel. I appear on behalf of the appellant, Mr. Dorian Brown. Your Honors, Mr. Brown has raised three points on appeal. Primarily they relate to the witness testimony in this case that went to trial regarding the identity of the shooter outside of the club in East St. Louis in 2008. The appellant contends that the testimony that was provided was inconsistent, incomplete and in fact this is a case of assumed identity. What we have is testimony from Celandra Lewis, a patron at Club Phoenix, Corey Walker, one of two security guards, Ms. Regina Davis who was one of two victims of a shooting. She was shot in her left leg outside the club after close. And then Fernando Lutz, the second security guard who was also shot outside of the club after close. There was an altercation earlier in the evening as I'm sure the court is aware from the facts as they were stated in the brief. Ms. Lewis saw the altercation, so of course did Mr. Lutz. He was actually the one who was collecting the cover charge at the door of the club and claims that it was Dorian Brown, which Mr. Brown confirmed in his testimony that they got into an argument, there was a bit of pushing, at some point Mr. Brown's necklace broke and then Mr. Walker, the second security guard, collected it and we'll say saw Mr. Brown at the door. Celandra Lewis says that she was outside the club, saw the altercation, but yet she didn't see Mr. Brown actually get into his vehicle, but she testified that she saw him in a white truck. A couple hours later after the shootings occurred, she says that I assumed it was him because it was the same truck that was parked across the street and up the street. Corey Walker, the second security guard, the one who sort of reinforced Mr. Lutz's efforts, claimed when he was asked what made you think it was this person, the person from the earlier altercation, he said, quote, because that's the only altercation we had that night. So we have these two witnesses who are both putting two and two together in their mind, but in fact not based on a firsthand identification. Ms. Lewis did not see the shooter. She said she heard shots, she ducked down. She does not know if the vehicle's windows were tinted. She believes that she saw a white truck. She also said that she consumed alcohol and believed herself to be under the influence at the time.  Mr. Walker, he described it as a bob, which he said refers to an afro with a neat, close shave. This is in contradiction, though, to Ms. Davis, who is the woman who was shot. She gave a couple of descriptions, actually. When she went to the hospital, she said that she was on medication. She gave a description at that time that the person was light-skinned with braids or long hair, but she didn't see the face of the shooter. She says that that description was wrong, and now, off of medication, much later, she recalls, in fact, that the complexion was high yellow with, quote, big fro, end quote, which would be contrary to Mr. Walker, who described a close-shaved head. Fernando Lusk is asked very little about the description because he maintains that it's Dorian Brown the entire time. So he pushes Mr. Brown out the door. A couple hours later, he sees a white king cab or a silver truck with four doors and claims that he made eye contact with the shooter before shots were fired. Appellant's contention is that the identification that Mr. Lusk has given is an assumed identity very similar to that given by Ms. Lewis and also by Mr. Walker, where these folks were going about their business on this evening, have no enemies that they recall, and so the only possible explanation in their minds is that it must have been the altercation from earlier over $5 and a necklace. And so his description of the vehicle, although he claims a four-door and not a two-door, roughly conforms to the description given by Ms. Lewis and Ms. Walker, but interestingly enough, Ms. Davis, who was accompanied to her car by Fernando Lusk, describes a dark-colored vehicle, even though she was the same distance from the vehicle as Mr. Lusk. In the brief, we pointed the court's attention to the case of People v. Smith, the 1999 Illinois Supreme Court case, where there were two witnesses relatively close to the shooter who were unable to identify him by his face but did note that the shooter exited a bar with two friends. There was a third supposed witness, Ms. Deborah Carraway, in that case, who claimed to identify the shooter, but said he exited alone, claimed that he exited from a different doorway than the victim. This is testimony contrary to the other two witnesses. The Smith court reversed and entered an acquittal as a matter of law, rather, because of the contradictory statements of a so-called eyewitness. Our contention is that what we have is the same here, that identity was assumed from the start because through no fault of their own, the folks couldn't imagine any other sort of scenario, even though, of course, random violence is certainly a possibility. And for that reason, their recollection quickly conformed to the altercation that was experienced earlier in the evening. There was an issue at trial, Your Honors, regarding hearsay also that goes to the identification of the shooter. Fernando Lusk testified after Ms. Regina Davis that as he walked her to her car and they stood across the street from the club, that as the vehicle came towards them, he said aloud, that's the dude we kicked out of the club. And he said this to Ms. Davis. And were they about 30 feet away when they passed? That's what I saw. Did I see 30 feet someplace in the brief? I believe Mr. Lusk's testimony is 30 feet and that Mr. Walker, who seems to have been still on the same side of the street as the club, testified that he was maybe 40 yards. That's my recollection from the transport journal. And what was the lighting at the time? When their testimony was decent street lighting, it was light? Yes, Your Honor. So it was approximately 5 in the morning but on a lit street. So he says that's the dude we kicked out of the club to Ms. Davis. She testifies just prior to Mr. Lusk at trial. She recounts his statement. It's clearly hearsay. She's recounting something that he said. I think that appellant's contention is that that was offered for the truth of the matter, asserted that not only that he said that but that that was actually the case, that the person driving towards them who then raised a light-spinned arm out the window and fired five to six shots hitting both of them was, in fact, the dude we kicked out of the club. Was that after he got shot or before he got shot? Just before, Your Honor. But Fernando Lusk testified. Yes, Your Honor, then he testified to the same statement. So the out-of-court declarant actually came into court and testified. That's correct, Your Honor. And he identified the shooter. Lusk, he was hit twice, I think, and clearly identified the shooter. Yes. The claim that we're making, despite Lusk's testimony, which is one thing, there's a difference in the position between Ms. Davis, who has no knowledge of Dorian Brown whatsoever, and Mr. Lusk because he experienced an altercation with this person earlier in the evening and no one can test that they had an argument at the door. Her testimony, our position is that it's prejudicial because it corroborates his own and that, in fact, the two would have separate motives for making such a statement. If there hadn't been before, there certainly was some ill will between the two after the altercation at the door, whereas with Ms. Davis, she's, from what it seems, completely unrelated to anything that happened earlier. And so there's a failure to contest that on cross-examination, and then the fact that her testimony was allowed to buttress and to corroborate his own, our position is that that was prejudicial. And in a case such as this, where the evidence is, well, really the only critical issue was the idea of identification of the shooter. Mr. Lusk claims that he's quite sure, but his testimony is not completely aligned with the other witnesses, and so our position would be that the degree of prejudice that it takes to swing the balance against Mr. Brown and to render the trial unfair would not be too much because the evidence is rather close on this issue. And then the third contention, Your Honors, on appeal is that Mr. Brown received ineffective assistance of counsel by trial counsel who elicited testimony from Mr. Moore and Ms. Toney, who were a manager and employee of a bar or club about five blocks away, which was a similar name, Club Paradise. The testimony from Mr. Moore and Ms. Toney placed Mr. Brown and their establishment sort of in a window of time between, but I think most importantly, at least at some point, at about a quarter to five in the morning, so only several minutes before the shooting as the police arrived just a couple minutes after five for a shooting at that time. The testimony that they gave was that he was in the establishment, that he left just a few minutes before the shooting. At that point, it becomes not totally clear what counsel is after at trial. He succeeded in placing his client near the scene within a few blocks. There was police testimony that you can travel that distance in East St. Louis in about a minute or so if you travel at the speed limit. You really can't describe them as an alibi, considering that the testimony put him outside of their establishment and out of their view within several minutes of this occurrence, and it seems to be of no help whatsoever. So Helen's contention is that there's no sound tactical reason for the testimony. It wasn't alibi testimony. If anything, it raised more questions than it answered, and even though they may have favorable regard for the defendant and were willing to testify on his behalf, it's certainly not the sort of thing that one would offer as an alibi. And if there are no further questions, that will conclude our submissions. I believe there are. I think they have a report. Counsel? May I please report? Counsel. Jennifer Camden on behalf of the state. I'll start with issue one of reasonable doubt. Lusk's eyewitness identification of the defendant was reliable and sufficient to sustain the defendant's conviction. First, consider Lusk's opportunity to observe the defendant the first time he saw him. When the defendant approached the club, Lusk testified that he got a very good look at the defendant. He testified that the defendant got into his face and that they were so close they could have kissed. He testified. And then Lusk saw the defendant again when he approached the club again looking for his jewelry. Next, consider just one to two hours later, Lusk's next opportunity to observe the defendant at and before the time of the shooting. When the defendant's truck went down Missouri Avenue so slowly as to grab the attention of both Lusk, who was across the street from the club, escorting Davis to her car, and Corey Walker, the bouncer at the club who was standing outside the club across the street from where Lusk and Davis were. Lusk testified that the driver's side window of the truck was rolled down. He testified that they were about 30 feet or 10 yards apart. This is in contrast to Walker who testified that he, in contrast, was about 40 yards from the truck because he was on the other side of the street. There was a working street light on the corner and bright lights had been installed in the parking lot in which Lusk and Davis were. Lusk testified that he and the defendant looked at each other before the shooting started, that they locked eyes. And it was then that Lusk stated, that's the guy we kicked out of the club. In other words, this identification occurred before the shooting started. Next, consider that when Lusk was released from the hospital three days later, he immediately went to the police station and picked the defendant out of a photo lineup. So not only was there an excellent opportunity for Lusk to observe the defendant both prior to the shooting and at the time of the shooting, Lusk also identified the defendant as quickly as he could as soon as he was released from the hospital. And then, of course, at trial he testified that he was certain that the defendant was the shooter. The defendant argues that the testimony of Lewis and Walker, the bar patron and bar employee on the other side of the street near Club Phoenix, was unreliable for various reasons, but neither identified the defendant as the shooter. Neither had a good view. Walker saw only an arm, and Lewis ducked down and didn't see even that. The defendant argues that Davis said that he had braids or long hair. In fact, when she was in the hospital, she said that he possibly had braids or long hair, and then later said that he had had an Afro-style haircut. The argument is that Lusk assumed that it was the defendant, the same person that he'd encountered earlier that evening. But he identified the defendant before the shooting started, before he saw the gun, indeed. And I think that undercuts that argument. And the defendant cites People v. Smith, which the people distinguish in their brief, notably the witness in Smith who identified the shooter, had a worse view of the shooting than others who could not identify the shooter in Smith. In this case, Lusk had a better view of the defendant than anyone else. Walker and Lewis were across the street, and the truck was facing away from them. They were in front of the club. The court will have access to a map showing where everyone was. That's a large blowup that's in the record that the court can see. Whereas Lusk could see into the open driver's side window of the truck, a view that neither Lewis nor Walker had. Additionally, Davis observed the defendant for much less time than Lusk did. She was fumbling in her purse when Lusk said, hey, that's the guy we kicked out of the club. And that's what prompted her to look up just in time only to see a light-skinned man. And at that point, the shooting started, and Lusk pushed her down and jumped on top of her to protect her. With regard to Issue 2, the hearsay issue, this issue is forfeited and cannot even be reviewed for plain error. The defendant did not object to the admission of Davis' testimony as to what Lusk said at trial. And the defendant in the appellant's brief here does not request or seek plain error review. And as the court knows, there was no reply brief. So under the Illinois Supreme Court's decision in People v. Hilliard, this court must honor that procedural default. In any event, this evidence was not hearsay. It was not offered for the truth of the matter asserted. And you can look at the state's closing argument to see how the state did use Davis' testimony as to what Lusk said, which was to show why Davis looked up at the driver prior to the shooting and to rebut the defense's suggestion that Lusk identified the defendant only after the fact. In other words, the state urged the natural probative effect of Davis' testimony. Recall that Davis neither identified the defendant prior to or at trial. And then finally, where the issue is forfeited, and this, Justice Cates, is I think what you were driving at, the erroneous admission of hearsay identification testimony, even assuming that this was erroneously admitted and even assuming that it was hearsay testimony, is reversible error only where it serves as a substitute for a courtroom identification or is used to strengthen and corroborate a weak identification. And here, of course, Lusk identified the defendant in court, and his identification testimony was strong. And then finally, with regard to Issue 3, ineffective assistance of counsel, the question is what was the trial strategy in offering the testimony of Moore and Toney, who placed the defendant at the club sometime between and as having left and this club paradise five blocks away. And Moore and Toney both testified that the defendant left approximately between 4.30 and 4.50 a.m. I think the answer to that question is self-evident to support the defendant's alibi defense. And you can look in the defense's closing argument and see how defense counsel used that testimony to argue that the defendant cannot possibly have had enough time to leave Club Paradise, travel back to Club Phoenix, conduct a stakeout, and commit the shooting. And I'd also note that in any event, the testimony of Moore and Toney placing the defendant in that neighborhood was cumulative because the defendant, of course, also testified that he was at Club Paradise that night. And many witnesses testified that the defendant had been at Club Phoenix only one to two hours before. So for those reasons, there was no ineffective assistance of counsel. For the reasons stated today and the reasons in the people's answer brief, I respectfully request that the court confirm. Thank you. Thank you, counsel. Counsel? Your Honors, this is a weak identification. At trial, Les was not asked what features did he observe. He was asked, who shot you? And he said, the defendant. The same guy I had an altercation with earlier that evening. But we have no idea what he actually saw. What we know is that there are four different hairstyles given for the shooter. We have long hair braids, a close shave, or a bigger haircut known as a big fro according to Ms. Davis. No idea. But when we get to Fernando Les, the person who apparently had the best vantage point or claims to, no one asked him what he saw. So we don't know. But we know his conclusion, and that's all this is. It's assumed identity. We don't know his features. There's no way to determine whether or not he didn't actually simply conform his recollection to the facts that would point to the person he had an altercation with earlier in the evening. And one of the other facts that I think lends support to that position is that Regina Davis is standing right next to him, and she sees a dark-colored vehicle. But Fernando Les doesn't see a dark-colored vehicle. No. He sees the white vehicle that was recalled by the people who saw the altercation, which were Mr. Walker and Ms. Lewis. So he recalls the vehicle that they attributed to the person in the altercation and then claims that that's the person. But we have no features by which to corroborate or discount his testimony. And so if the court were not to find that an acquittal is required as a matter of law, then we would ask the court to find that the hearsay testimony was certainly prejudicial because this is a weak identification. And I thank the honorable court. Thank you. Thank you, counsel. We appreciate the briefs and arguments from counsel. We'll take this case under advisory. The court will be in a short recess and then resume oral argument. All rise.